UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PROTOSTORM, LLC and PETER FAULISI,

                        Plaintiffs,

-against-

ANTONELLI, TERRY, STOUT & KRAUS, LLP,
DALE HOGUE, FREDERICK D. BAILEY, CARL
I. BRUNDRIDGE, ALAN E. SCHIAVELLI, and
JOHN DOES 1-10,

                        Defendants.*
------------------------------------------------------------X

**MEMORANDUM & ORDER**
**08-CV-931 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Protostorm, LLC ("Protostorm") and Peter Faulisi ("Faulisi") (collectively, "Plaintiffs") bring this action alleging legal malpractice, breach of contract, and breach of fiduciary duty. (See Second Amended Complaint ("Complaint") (Docket Entry # 114).) Defendant Dale Hogue ("Hogue") moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Rule 56. (Docket Entry # 93.) Hogue also asserts that he should not be forced to defend against Plaintiffs' claims in this court because they are the subject of a binding arbitration agreement. (See id.) For the reasons set forth below, Hogue's motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

    **A.    The Parties**

Plaintiffs in this action are Protostorm, a Delaware limited liability company with offices in New York, and Peter Faulisi, one of Protostorm's co-founders. (See Faulisi Decl. (Docket

---

* The court does not include Third-Party Defendants in the caption because their rights are not affected by this Memorandum & Order.

1

Entry # 77) ¶ 1). Faulisi and Alan Rummelsburg are the current members of Protostorm. (Id. ¶ 4.) Plaintiffs initially brought this action against two individual lawyers, Hogue and Frederick Bailey ("Bailey"), as well as the Virginia law firm of Antonelli, Terry, Stout & Kraus, LLP ("ATS&K"). (See Compl. (Docket Entry #1).) Bailey, Hogue, and ATS&K represented Protostorm in connection with the company's efforts to secure patent protection for an online computer game and related software (the "Invention"). (See Complaint ¶¶ 8, 14; Faulisi Decl. ¶ 1.) Bailey worked at ATS&K throughout the firm's representation of Protostorm. (Id. at 5.) Hogue initially was "Of Counsel" at ATS&K, but left the firm sometime between late 2000 and early 2001. (See Hogue 56.1 Statement ("H 56.1") (Docket Entry #95) ¶ 2.)

Plaintiffs' current Complaint names several additional Defendants. Specifically, the new Defendants are Carl Brundidge ("Brundridge"), Alan Schiavelli ("Schiavelli"), and "John Does 1-10." (See Complaint ¶¶ 6-9.) The Complaint alleges that, like Bailey, the additional Defendants were ATS&K lawyers who represented Protostorm. (Id. ¶¶ 8, 9.) The court refers to ATS&K, Bailey, Brundridge, and Schiavelli collectively as the "ATS&K Defendants."

On September 30, 2009, the ATS&K Defendants filed an Amended Third-Party Complaint (Docket Entry # 133) against the law firm of Duval & Stachenfield LLP ("D&S"), and two attorneys, John Ginley ("Ginley") and Kathy Worthington ("Worthington"). According to the Third-Party Complaint, D&S, Ginley, and Worthington also represented Protostorm in connection with the company's patent efforts and served as intermediaries between the ATS&K Defendants and Protostorm. (See ATS&K Defendants' Third-Party Complaint ¶¶ 25-31). At the time, Ginley worked at D&S. (Id. ¶ 19). As Third-Party-Plaintiffs, the ATS&K Defendants seek contribution, indemnification, and damages. (Id. ¶ 9.) On October 1, 2009, Hogue filed an Amended Third-Party Complaint (Docket Entry # 135) against D&S and Ginley alleging substantially the same claims as the ATS&K Defendants.

## B. Factual Background

Protostorm first retained ATS&K in April 2000, while Hogue was "Of Counsel" to the firm. (Id.) On June 27, 2000, ATS&K filed a provisional patent application for the Invention in the United States Patent Office. (See Pl. Ex. 19.) After Hogue left ATS&K, Worthington suggested that Protostorm ask Hogue to draft a non-provisional patent application. (H 56.1 ¶ 6.) On May 17, 2001, Hogue sent Worthington a copy of his retainer agreement (the "Retainer"). (See Pl. Ex. 31.) That same day, Worthington forwarded the Retainer to Ginley for "review and execution by the appropriate legal signatory." (See id.) At the time, Ginley was advising Protostorm with respect to general corporate matters. (H 56.1 ¶ 5.)

The first sentence of the Retainer reads: "I am very pleased that you have requested me to act as your patent attorney in connection with the Protostorm, Inc., patent filing, that I understand, includes securing protection for your inventions." (Pl. Ex. 31 at 1.) The Retainer is three pages and covers both the "terms of [Hogue's] representation" and his "general billing policies." (Id.) The Retainer specifies that it is to be governed by California law "without reference to [California] conflicts of law principles." (Id. at 3.) It further provides that "[a]ny dispute arising out of this agreement shall be settled by arbitration in California administered by the American Arbitration Association under its Commercial Arbitration Rules" (the "Arbitration Clause"). (Id.) On May 21, 2001, Faulisi and the co-founder of Protostorm signed the Retainer on behalf of the company. (See Pl. Ex. 29 at 3.) Hogue also signed the Retainer. (Id.)

In the weeks following the execution of the Retainer, Hogue prepared a non-provisional patent application for Protostorm. (H 56.1 ¶ 11.) On June 20, 2001, Hogue forwarded that application to ATS&K for filing with the United States Patent Office. (Id. ¶ 12.) The parties dispute the extent to which Hogue continued to represent Protostorm after this point and when, if ever, their attorney-client relationship terminated.

3

On June 25, 2001, ATS&K filed an international patent application pursuant to the Patent Cooperation Treaty ("PCT"). (Pl. Ex. 55.) By filing a PCT application, an applicant may simultaneously seek patent protection in multiple countries. Plaintiffs assert that, despite Protostorm's expressed desire to secure patent protection for the Invention in the United States, the PCT application did not designate the United States as one of the countries in which protection was sought. (Compl. ¶¶ 21-24.) Plaintiffs further assert that, as a result of both this initial error and the failure of Protostorm's lawyers to meet subsequent deadlines, Protostorm lost the opportunity to secure patent protection for the Invention in the United States. (Id. ¶ 57.)

Plaintiffs assert that all of the Defendants worked jointly in their representation of Protostorm. (See, e.g., Pl. Mem. (Docket Entry #76) 9.) Plaintiffs' allegations do not always distinguish between individual Defendants. For the purposes of Hogue's instant motion, the court construes the allegations against Hogue as broadly as possible and assumes that the acts of other Defendants can be attributed to Hogue. Therefore, the factual allegations against Hogue include (1) filing a defective patent application; (2) failing to correct the filing while it was possible to do so; (3) failing to file a new application while it was possible to do so; (4) concealing the initial mistake; (5) affirmatively misleading Plaintiffs regarding the status of the application; and (6) failing to prosecute the patent in countries that were designated in the PCT application. (See Compl. ¶ 50.)

## II. DISCUSSION

Hogue moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Rule 56. He also asserts that he should not be forced to defend against

Plaintiffs' claims before this court because they are subject to a binding arbitration agreement.[1] Hogue's primary argument in favor of dismissal and for summary judgment is that Plaintiffs' claims are untimely. If, as Hogue alleges, however, Plaintiffs' claims are properly subject to arbitration, the court may not address their merits. See Shaw Group Inc. v. Triplefine Intern. Corp., 322 F.3d 115, 120 (2d Cir. 2003). And "if the claims are subject to a valid and enforceable arbitration agreement, the arbitrator, not the court, should be deciding the statute of limitations issue." Martens v. Thomann, 273 F.3d 159, 179 n.14 (2d Cir. 2001). The court begins by addressing Hogue's arguments for enforcement of the Arbitration Clause.

A. **The Court's Role under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., requires courts to enforce arbitration agreements in contracts involving interstate commerce. The Retainer that the parties executed contains a written arbitration clause and concerns a contract for legal services between a Delaware corporation with headquarters in New York and an attorney with offices in South Carolina and, at the time of execution, California.[2] It is subject to the FAA.

The FAA embodies a "strong policy in favor of rigorously enforcing arbitration agreements." Doctor's Assocs. v. Hamilton, 150 F.3d 157, 162 (2d Cir. 1998), cert denied, 525 U.S. 1103 (1999). The FAA's primary enforcement provision is Section 4, which states that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

---

[1] Although Hogue filed the instant motion before Plaintiffs filed their current Complaint, the parties have agreed, by stipulation, that Hogue's motion should be addressed to the Complaint. (See Docket Entry # 120.)

[2] Faulisi signed the Retainer in a corporate, rather than an individual capacity. Nonetheless, any claims that he possesses against Hogue also arise from services under the Retainer and he is likewise bound by the Arbitration Clause. Cf. Doctor's Assocs. v. Stuart, 85 F.3d 975, 984-85 (2d Cir. 1996) (refusing to allow parties "to evade the agreed-upon resolution of their disputes in an arbitration forum" by naming a defendant in an individual capacity).

Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985) (emphasis in original).

Section 3 of the FAA also reflects the strong federal policy in favor of arbitration. It provides that, on a party's application, a court must stay an action upon "any issue referable to arbitration under an agreement in writing . . . until such arbitration has been had." 9 U.S.C. § 3. Where a party faces litigation that it believes should be resolved by arbitration, it often moves simultaneously under both Section 3 and Section 4. If successful, the party may obtain an order that both stays the existing action and compels arbitration. See, e.g., Barbieri v. K-Sea Transp. Corp., 566 F. Supp. 2d 187 (E.D.N.Y. 2008).

It is unclear what relief Hogue seeks here. In his actual motion, he requests "an Order enforcing the arbitration provision between the parties and referring this matter to arbitration." Elsewhere, he indicates that he would like the court to "compel" arbitration. (Hogue Reply (Docket Entry #99) 19.) But he does not cite a specific legal basis for relief. If, however, Hogue seeks an order compelling arbitration under Section 4, such relief is not available here. A district court has no authority under Section 4 to compel arbitration outside its district. See Symphony Fabrics Corp. v. Knapel, No. 07-CV-6606 (GEL), 2008 U.S. Dist. LEXIS 44588 *9 n.2 (S.D.N.Y. June 2, 2008); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003). Because the Arbitration Clause calls for arbitration in California, the court cannot issue an order compelling the parties to arbitrate.

Accordingly, the court construes Hogue's motion as seeking a stay of Plaintiffs' pending claims against him in this court under Section 3 so the parties may arbitrate them in California. When presented with such a motion, a court's role is limited to determining (1) whether there is a

binding agreement to arbitrate and, (2) if so, whether the claims asserted fall within its scope. See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). Where these conditions are satisfied, a court has no discretion and must grant a requested stay. See 9 U.S.C. § 3.

### B. Existence of Agreement to Arbitrate

The party seeking to resolve a dispute by arbitration has the burden of proving a valid arbitration agreement. See Symphony Fabrics, 2008 U.S. Dist. LEXIS 44588 at *31; Peterson v. Beale, No. 92-CV-5412 (RPP), 1995 U.S. Dist. LEXIS 11580 at *3 (S.D.N.Y. Aug. 11, 1995). A court evaluating this issue applies the same standard as it would when faced with a motion for summary judgment. See Mina v. Foot Locker, Inc., No. 09-CV-0472 (DB), 2009 U.S. Dist. LEXIS 93155 at *3 (S.D.N.Y. Sept. 30, 2009) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175. "[W]hether the parties agreed to arbitrate is determined by state law," Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002), and a party contesting the existence of a an agreement to arbitrate may assert all "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996).

The court must first determine which state's contract law applies to the threshold isssue of the existence of an agreement to arbitrate. A district court sitting in diversity applies the choice-of-law rules of the state in which it sits. See Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). New York courts generally honor an express choice-of-law clause if the selected state has sufficient contacts with the matter in dispute, so long as there is no fraud or violation of public policy. See Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, 230 F.3d 549, 556 (2d Cir. 2000).

Here, the Retainer provides that California law shall govern its terms "without reference to [California] conflicts of law principles." (Pl. Ex. 29 at 3.) Neither party suggests that applying California law would perpetuate fraud or violate public policy. Plaintiffs briefly assert that the events in dispute are not sufficiently connected with California. (See Pl. Mem. 46). At the time the Retainer was executed, however, one of Hogue's offices was in California. (See Pl. Ex. 29.) The Retainer also designates California as the arbitral forum. (Id.) Plaintiffs do not suggest that any other state's contract law should govern. For these reasons, the court concludes that application of California law is appropriate. See Torain v. Clear Channel Broad., Inc., 651 F. Supp. 2d 125, 138 (S.D.N.Y. 2009) (sufficient connections to honor choice of Texas law where headquarters of one party were in Texas and agreement specified Texas as venue for resolving dispute).

Plaintiffs do not meaningfully dispute the existence of a binding agreement to arbitrate. In passing, Plaintiffs assert that, by including the California choice of law and arbitration provisions in the contract, Hogue acted "unfairly" and "perhaps unethically." (Pl. Mem. 46.) Yet Plaintiffs advance no arguments that they are not bound to arbitrate under California law – or any other body of state law – nor do they allege any facts that would support such a conclusion.[3] See generally Freeman v. State Farm Mut. Auto. Ins. Co., 14 Cal. 3d 473, 479 (1975). As Hogue points out, Plaintiffs appear to have been advised by other legal counsel before signing the retainer. (See Pl. Ex. 31.) There is no allegation that Hogue ever misled Plaintiffs regarding the Retainer or coerced them into signing. Nor is there any allegation that the Retainer is substantively unconscionable. The parties' primary dispute is not whether a binding agreement

---

[3] If the parties' contacts with California were insufficient, this court would instead apply New York law. See IBM v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citing Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994)). As with California, the court is aware of no basis under New York law for concluding that the parties did not agree to arbitrate. See generally Waldron v. Goddess, 61 N.Y.2d 181, 183 (1984).

to arbitrate exists, but whether Plaintiffs' claims fall within its scope. The court concludes that Hogue has proven the existence of a valid arbitration agreement.

## C. The Scope of the Arbitration Clause

Unlike the existence of an agreement to arbitrate, the scope of such an agreement, once shown, is a question of law to be determined by a court. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). Plaintiffs assert that the Arbitration Clause solely governs fee disputes. (See Pl. Mem. 46.) Hogue, by contrast, argues that the Arbitration Clause is sufficiently broad to encompass all of Plaintiffs' claims. (See Reply 16-18.) Each side cites to California law to support their arguments regarding the scope of the Arbitration Clause. No party, however, explains why California law should apply to this question. While the existence of a binding agreement to arbitrate is a matter of state law, "[t]he issue of an arbitration agreement's scope is governed by the federal substantive law of arbitrability." Progressive Cas. Ins. Co. v. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 48 (2d Cir. 1993).

"Federal policy strongly favors arbitration as an alternative dispute resolution process." Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995); see also JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

When a district court analyzes whether a particular dispute is encompassed by an arbitration clause, it must begin by classifying the arbitration clause as either "broad" or "narrow." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). The Second Circuit has concluded that arbitration clauses analogous to the Arbitration Clause at issue here are properly classified as broad. See id. at 226 (2d Cir. 2001) (clause covering "any dispute arising from the making, performance or termination of

9

agreement" is broad); ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 32 (2d Cir. 2002) ("the phrase 'arising from,' as opposed to 'arising under,' in an arbitration clause suggests a broad scope"); JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 167 (2d Cir. 2004) (the phrase "'any and all differences and disputes of whatsoever nature arising out of' an agreement is at least as expansive as the language contained in a number of arbitration clauses that this Court has characterized as 'broad'").

Where, as here, parties have agreed to a broad arbitration clause, "a presumption of arbitrability" arises. Louis Dreyfus, 252 F.3d at 224. Even if a party's claims are "collateral" to the contract containing the agreement to arbitrate, a court should order arbitration if the claims implicate "issues of contract construction or the parties' rights and obligations under [the contract]." Id. That is, "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d at 172. "The factual allegations in the complaint rather than the legal causes of action asserted" determine whether a claim falls within the scope of a broad arbitration clause. Id. at 173.

While only some of Plaintiffs' claims are based on breaches of the actual language of the Retainer, all of the underlying allegations involve Hogue's representation of Protostorm. This is precisely the legal representation contemplated by the Retainer. The allegations in Plaintiffs' complaint arise from that relationship, and touch matters covered by the Retainer. See, e.g., Kirschner v. Grant Thornton LLP, No. 07-MDL-1902 (GEL), 2008 U.S. Dist. LEXIS 41453 at *20 (S.D.N.Y. May 21, 2008) (claims for, inter alia, malpractice, fraud, and fiduciary breach sufficiently connected to engagement letter with accounting firm to fall within scope of arbitration agreement). Plaintiffs' claims fall within the scope of the Arbitration Clause.

## D. Applicability of the California Arbitration Act

Plaintiffs assert that the parties incorporated California's arbitration law into the Retainer. Even where an arbitration agreement is governed by the FAA, the parties may contractually incorporate state law provisions into their agreement. See Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 475 (1989). Here, the Retainer does not invoke specific provisions of state law but contains a general California choice-of-law clause. The Second Circuit has concluded that, under California contract law, such a clause incorporates California procedural rules regarding arbitration, provided that they do not restrict the parties' rights under the FAA. Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 328 (2d Cir. 2004), cert denied, 543 U.S. 871 (2004). But, "a general choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act." Id. at 327. A restriction is substantive if it limits "the rights of the parties to arbitrate particular issues or the arbitrator's power to resolve the dispute." Id.

Section 1281.2(c) of the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code. Ann. § 1280 et seq., confers a court with discretionary authority to stay judicial and arbitral proceedings or to order intervention or joinder if "a party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Id. The Supreme Court has held that 1281.2(c)(4), which allows a court to stay arbitration pending the resolution of a judicial proceeding, is consistent with the FAA. See id. at 328 (discussing Volt, 489 U.S. at 479 (1989)).

Plaintiffs assert that, pursuant to section 1281.2(c), Hogue should be forced to defend their claims before this court. The court concludes, however, that forcing Hogue to do so, given the existence of a binding arbitration agreement, would impose a substantive restriction on

11

Hogue's right to arbitrate. By contrast, a stay "determines only the efficient order of proceedings" and does "not affect the enforceability of the arbitration agreement itself." Id. at 327 (quoting Doctor's Assocs., 517 U.S. at 688). Moreover, even if the Retainer conferred the court with the discretionary authority to compel Hogue to defend against Plaintiffs' claims in this forum, the court would decline to exercise it in this case.

## V. CONCLUSION

Because the parties entered into an enforceable agreement to arbitrate and because the claims that Plaintiffs assert fall within its scope, Hogue's motion for the enforcement of the Arbitration Clause is GRANTED. Plaintiffs' claims against Hogue are stayed pursuant to Section 3 of the FAA.[4] Hogue's motions to dismiss and for summary judgment are DENIED.

SO ORDERED.

s/Hon. Nicholas G. Garaufis

Dated: Brooklyn, New York  
March 4, 2010

NICHOLAS G. GARAUFIS  
United States District Judge

---

[4] Although the text of Section 3 does not specifically provide for dismissal, several courts have concluded that dismissal is appropriate where "all of the issues raised in a litigation lie within the scope of an arbitration agreement." See Symphony Fabrics Corp, 2008 U.S. Dist. LEXIS at *20-21 (S.D.N.Y. June 2, 2008) (quoting Sea Spray Holdings, 269 F. Supp.2d at 366. Here, however, dismissal is not appropriate because Hogue's third-party complaint remains before the court.

12