UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PROTOSTORM, LLC and PETER FAULISI,

                              Plaintiffs,

       -against-

ANTONELLI, TERRY, STOUT & KRAUS, LLP,
DALE HOGUE, FREDERICK D. BAILEY, CARL
I. BRUNDRIDGE, ALAN E. SCHIAVELLI, and
JOHN DOES 1-10,

                              Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
**08-CV-931 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

In a Memorandum & Order dated March 8, 2010 ("Order" (Docket Entry # 205)), the court stayed Plaintiffs' claims against Defendant Dale Hogue ("Hogue") under section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. Plaintiffs now move, under Local Civil Rule 6.3, for reconsideration and reargument of that Order. (Docket Entry # 213.) As set forth below, Plaintiffs' motion is DENIED.

**I.    STANDARD FOR RECONSIDERATION**

A motion for reconsideration will only be granted if the moving party can establish: "(1) that the court overlooked controlling decisions or data; (2) that there has been a change in controlling law; (3) that new evidence has become available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice." Hughes v. McWilliams, No. 04-CV-7030 (KMW), 2009 U.S. Dist. LEXIS 84687, at *1 (S.D.N.Y. Sept. 16, 2009) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Courts narrowly construe and strictly apply the Rule in order to avoid "repetitive arguments on issues that have already been

1

considered fully by the court." Caleb & Co. v. E.I. Du Pont De Nemours & Co., 624 F. Supp. 747, 748 (S.D.N.Y. 1985).

## II. THE ORDER AT ISSUE

As discussed in greater detail in the court's previous Order, Protostorm and Hogue signed a Retainer Agreement (the "Retainer") in May 2001. (Decl. of Arthur M. Handler (Docket Entry #80), Ex. 31.) The Retainer contains a California choice-of-law clause.[1] (Id. at 3.) It further provides that "[a]ny dispute arising out of this agreement shall be settled by arbitration in California administered by the American Arbitration Association under its Commercial Arbitration Rules." (Id.)

In its previous Order, the court construed Hogue's motion for "an [o]rder enforcing the arbitration provision between the parties and referring this matter to arbitration" as a request to stay Plaintiffs' claims against him under section 3 of the FAA. (Order 6.) The court identified its role when faced with such a motion as determining (1) whether there is a binding agreement to arbitrate and, (2) if so, whether the claims asserted fall within its scope. See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). Under this standard, the court concluded that Plaintiffs' claims against Hogue were subject to a binding arbitration agreement. (Order 7-10.)

The parties do not challenge these portions of the Order. Plaintiffs argue, however, that the court erred in concluding that the Retainer's choice-of-law clause did not incorporate section 1281.2(c) of the California Arbitration Act ("CAA"). Cal. Civ. Proc. Code § 1281.2(c). Section 1281.2(c) authorizes courts to deny a motion to compel arbitration where a "party to the arbitration agreement is also a party to a pending court action or special proceeding with a third

---

[1] Specifically, it provides that the agreement is to be governed by California law "without reference to [California] conflicts of law principles." (Id.)

2

party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Id.

Plaintiffs further assert that the court should have exercised its discretion under that section to deny Hogue's motion because there is a risk that conflicting rulings might arise between this court and an arbitral tribunal. Plaintiffs claim that the court overlooked two controlling holdings: Volt Info. Sciences v. Bd. of Trustees, 489 U.S. 468 (1989), and Security Insurance Co. v. Trustmark Insurance Co., 360 F.3d 322 (2d Cir. 2004).

The court considered both Volt and Security Insurance in ruling on Hogue's motion; the Order specifically cites both cases. In light of Plaintiffs' instant motion, however, the court revisits the difficult issues that arise when federal arbitration law and contractual interpretation intersect. Although these issues are complex and unsettled, the question presented here is straightforward: To what extent does Volt govern the interpretation of the Retainer? The court finds that, after the Supreme Court's decision in Preston v. Ferrer, 552 U.S. 346 (2008), Volt is not determinative of the issues presented by Hogue's motion. To explain why, the court discusses the evolution of the law in this area, beginning with Volt itself.

### III. DISCUSSION

#### A. Volt

Volt involved a construction contract between Volt Information Sciences and Leland Stanford Junior University ("Stanford"). Volt, 489 U.S. at 470. The contract provided for arbitration of all disputes "arising out of or relating to [the] contract or the breach thereof" under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). Id. It also contained a choice-of-law clause specifying that the agreement would be governed by the law of the place where the project was located. Id. After a dispute arose, Stanford filed an action against Volt in California Superior Court, alleging fraud and breach of contract. Id. at

3

471. Stanford also sought indemnity from two other companies involved in the construction project that had not agreed to arbitrate disputes. Id. Volt petitioned the Superior Court to compel arbitration of its dispute with Stanford. Id. Stanford in turn moved to stay arbitration pursuant to section 1281.2(c) – the same provision of the CAA at issue in this case. Id. The Superior Court stayed the arbitration pending the outcome of the litigation. See id. The California Court of Appeal affirmed and Volt appealed to the United States Supreme Court. Id.

The Supreme Court accepted the California Court of Appeal's conclusion that, by specifying that the agreement would be governed by "the law of the place where the project is located," the parties incorporated the CAA into their contract, including section 1281.2(c). Id. at 476. The Court rejected Volt's argument that this interpretation offended the principle that "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA] due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. at 475-76 (internal citation omitted). In doing so, the Volt Court noted that section 1281.2(c) is "manifestly designed to encourage resort to the arbitral process." Id. at 476.

Writing in dissent, Justice Brennan criticized the majority's deference to the California Court of Appeal's construction of the choice-of-law clause, particularly given the federal rights at issue. He argued that the FAA "establishes substantive federal law that must be consulted in determining whether (or to what extent) a given contract provides for arbitration." Id. at 485 (citing Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983)). Justice Brennan further asserted that the majority's approach undermined both the federal policy

in favor of arbitration and the likely intent of the parties.[2]  Id. at 486-94.  Finally, Justice Brennan called attention to the practical implication of the decision: "[S]tay[ing] arbitration while litigation of the same issue goes forward[] means simply that the parties' dispute will be litigated rather than arbitrated."  Id. at 487.

   B.     **Mastrobuono**

Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52 (1995), cast the Supreme Court's holding in Volt into some doubt.  The contract at issue in Mastrobuono contained a general New York choice-of-law clause.  Id. at 58.  It also included an arbitration clause providing that "any controversy" between the parties "shall be settled by arbitration" in accordance with the rules of the National Association of Securities Dealers (NASD) or the rules of two stock exchanges.  Id. at 59.  The question in Mastrobuono was whether the contract incorporated New York decisional law that prevented arbitrators from awarding punitive damages.  The Supreme Court construed the NASD rules as contemplating a punitive damages award.  See id. at 61.

According to the Court, the New York choice-of-law clause introduced "an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards."  Id. at 62.  It noted that, given the federal policy favoring arbitration, ambiguity must be resolved in favor of arbitration.  Id.  The Court also cited state law governing the construction of contracts, explaining that it relied on "precedent from Illinois, the forum State and place where the contract was executed, and New York, the State designated in the contract's choice-of-law clause."  Id. at 62 n.9. Ultimately the Court concluded that "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to

---

[2] Justice Brennan stated: "It seems to me beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law."  Id. at 506.  He further observed that whether a rule is likely to "induce parties to agree to arbitrate disputes" is a matter entirely distinct from the interpretation of a particular contract.  Id. at 505 n.8.

5

encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators." Id. at 64. Because New York law preventing arbitrators from awarding punitive damages fell into the latter category, it was not incorporated. Id. The extent to which Mastrobuono's treatment of contractual ambiguity rested on state and federal law was not, however, entirely clear.

Writing in dissent, Justice Thomas argued that the majority's conclusion was difficult to reconcile with Volt.[3] Id. at 64. Responding to this argument, the majority appeared to limit Volt, pointing out that in Volt it "did not interpret the contract de novo" but instead "deferred to the California court's construction of its own State's law." Id. at 60 n.4.

### C. Attempts to Reconcile Mastrobuono and Volt

The "import of the Mastrobuono and Volt decisions is a fertile source of debate," with state and federal courts drawing widely divergent conclusions. Security Insurance Co. v. Trustmark Insurance Co., 283 F. Supp. 2d 602, 606 (D. Conn. 2003).[4] The court will not undertake a complete survey of the efforts to reconcile these decisions. Nonetheless, some discussion is necessary background for the Second Circuit's opinion in Security Insurance and to address the question of the extent to which it survives Preston.

As discussed in greater detail below, most courts – and the majority of the federal courts of appeals – have read Mastrobuono to significantly limit Volt. Of particular significance is the

---

[3] According to Justice Thomas: "Volt makes no distinction between rules that serve only to distribute authority between courts and arbitrators (which the majority finds unenforceable) and other types of rules (which the majority finds enforceable). Indeed, the California rule in Volt could be considered to be one that allocates authority between arbitrators and courts, for it permits California courts to stay arbitration pending resolution of related litigation." Id. at 67.

[4] See also Note, An Unnecessary Choice of Law: Volt, Mastrobuono, and Federal Arbitration Act Preeemption, 115 Harv. L. Rev. 2250, 2250-51 (2002) ("One ambiguity that has led to a particularly thorny question of contract construction is the generic choice-of-law clause, which appears in many contracts. Courts have struggled to determine whether these clauses were intended to supply only the general substantive law of the selected forum, or instead to supply both that forum's substantive law and its arbitration rules."); Mount Diablo Med. Ctr. v. Health Net of California, Inc., 101 Cal. App. 4th 711, 721 (Cal. App. 1st Dist. 2002) (surveying critical analysis of Volt and Mastrobuono).

6

Ninth Circuit's decision in Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205 (9th Cir. 1998). That case involved essentially the same contractual provisions as Volt and Mastrobuono did, i.e., an arbitration clause and a general choice-of-law clause. Id. at 1206. The arbitration clause in Wolsey incorporated the AAA rules. Id. As in this case, the question in dispute was whether the choice-of-law clause incorporated section 1281.2(c) of the CAA.

The Wolsey court found that, under Mastrobuono, the relevant question was whether section 1281.2(c) is a "'substantive principle that [California] courts would apply' or is instead 'a special rule[] limiting the authority of arbitrators.'" Id. at 1212 (quoting Mastrobuono, 514 U.S. at 64). It concluded that section 1281.2(c) fell into the second category because it affected the "allocation of power between alternative tribunals" rather than "substantive rights and obligations." Id. Accordingly, as a matter of federal law, the choice-of-law clause could not be read to incorporate section 1281.2(c). Id. at 1213. The Wolsey court specifically found that Volt was not controlling because of its unique procedural posture, i.e., the Supreme Court was deferring to an existing state court contractual interpretation. Id. at 1212-13. At least two district courts have also found that, under Mastrobuono, a general choice-of-law clause is insufficient to incorporate section 1281.2(c). See Nissan World, LLC v. Mkt. Scan Info. Sys., No. 05-CV-02839 (JAG), 2007 U.S. Dist. LEXIS 41066, at *16 (D.N.J. June 5, 2007) ("[T]his Court's decision as to whether the choice of law clause includes California arbitration law is not bound by Volt."); Olathe Senior Apts., LP v. Ace Fire Underwriters Ins. Co., No. 04-CV-2346 (CM), 2005 U.S. Dist. LEXIS 43449, at *23 (D. Kan. Sept. 29, 2005) ("[A]bsent a provision that specifically provides that the California arbitration rules will govern the issues subject to arbitration, the court finds that the FAA controls and plaintiffs' claims . . . are subject to arbitration without application of the stay provisions in § 1281.2.").

Other federal courts of appeal – while not specifically analyzing section 1281.2(c) – have read Mastrobuono to broadly limit, as a matter of federal law, the extent to which a general choice-of-law provision incorporates state arbitration law.[5] See, e.g., Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 288-89 (3d Cir. 2001) ("We hold that a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime."); Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002) ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration."); Dominium AustinPartners, LLC v. Emerson, 248 F.3d 720, 729 n.9 (8th Cir. 2001) (citing UHC Mgmt. Co., Inc. v. Computer Scis. Corp., 148 F.3d 992, 997 (8th Cir. 1998)) ("The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern."); Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 936 (6th Cir. 1998) ("Because we are unconstrained by a deferential standard of review, this Court must follow Mastrobuono and join the long line of cases distinguishing Volt, effectively limiting its applicability to cases with a similar procedural posture.")[6] Notably, several of these cases cite Justice Brennan's dissent in Volt. See, e.g., Ferro, 142 F.3d at 938 (widely reading choice-of-law clauses as a decision to opt out of the FAA "would effectively emaciate the Act itself") (citing Volt, 489 U.S. at 488.)

That is not to say, however, that the "majority" approach to interpreting choice-of-law clauses in arbitration agreements has escaped criticism. For example, in Mount Diablo Medical Center v. Health Net of California, Inc., 101 Cal. App. 4th 711 (Cal. Ct. App. 2002), the

---

[5] See generally Jennifer Trieshmann, Horizontal Uniformity and Vertical Chaos: State Choice of Law Clauses and Preemption Under the Federal Arbitration Act, 2005 J. Disp. Resol. 161, 169. ("The majority position, followed by eight of the federal circuits, holds that the inclusion of a general choice of law provision in a contract containing an agreement to arbitrate will not oust application of the FAA in favor of state law arbitration standards.")

[6] See also Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 153 (D.D.C. 2004) (distinguishing Ekstrom v. Value Health, Inc., 68 F.3d 1391 (D.C. Cir. 1995), and stating that "Mastrobuono does not prevent parties from deciding that a state's arbitration law applies; it only requires that such a choice is expressed unequivocally.")

8

California Court of Appeals rejected the majority approach in favor of a "traditional attempt to discern the intention of the parties." Id. at 722 (citing Roadway Package, 257 F.3d at 308 (Ambro, J., concurring)).[7] It also found Wolsey's determination that section 1281.2(c) is "a special rule limiting the authority of arbitrators" to be inconsistent with the Supreme Court's conclusions in Volt and Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681 (1996). Mount Diablo, 101 Cal. App. 4th at 726. Accordingly, the Mount Diablo court interpreted a general California choice-of-law clause to incorporate section 1281.2(c). Id.

C. **Security Insurance**

In Security Insurance, the Second Circuit addressed the intersection of Volt and Mastrobuono. The court described the case as raising "a recurring and troubling theme in many commercial contracts: to what extent must a court – confronted with a choice-of-law provision in a contract – incorporate the designated state's statutory and common law governing arbitrations even when doing so seems contrary to the Federal Arbitration Act." Security Insurance, 360 F.3d at 323. The central issue in Security Insurance was whether a California choice-of-law clause should be read to incorporate section 1281.2(c) of the CAA. In resolving this question, the Second Circuit declined to follow the majority position.

The contract at issue provided that "any irreconcilable dispute" between the parties "shall be submitted for decision to a board of arbitration composed of two arbitrators and an umpire." Id. at 323 n.1. It did not incorporate any formal private arbitration rules. The contract also specified that, with a limited exception, it was to be "governed by and construed according to the

---

[7] For another critical view see An Unnecessary Choice of Law, supra note 4. The author criticizes the majority approach as "ignor[ing] the traditional application of state contract law in determining the meaning of a contract" and unnecessarily displacing state law that is consistent with the FAA. Id. at 2261. The author further argues that, because "both Volt and Mastrobuono applied state contract principles in reaching their results," the default rules imposed by these opinions are only "superficially anchored to Supreme Court precedent." Id. at 2266. The author concedes, however, that these decisions "create easy, administrable rules; parties can contract around them; and they reduce the frequency of litigation by providing clear notice of the likely result." Id. at 2270.

9

laws of the state of California." Id. at 323 n.2. The Second Circuit acknowledged the likelihood that, post-Mastrobuono, "as a matter of federal law, general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators." Id. at 326.[8] Relying on Volt the court concluded, however, that section 1281.2(c) did not trigger this rule of construction because it is a "state procedural rule that determines only the efficient order of proceedings and does not affect the enforceability of the arbitration agreement itself." Id. (citing Doctor's Associates, 517 U.S. at 688). The court recognized that Wosley reached a contrary determination, but declined to follow the Ninth Circuit. Thus, interpreting the contract solely as a matter of state law – and relying heavily on Mount Diablo – the Security Insurance court concluded that the choice-of-law clause incorporated section 1281.2(c).

Security Insurance represents a striking departure from the majority rule and has been subject to some pointed criticism. See, e.g., Trieshmann, supra note 5, at 173 ("The Second Circuit's analysis is inconsistent with Supreme Court precedent and effectively deprives the parties of their right to arbitrate instead of litigate.")[9] The California Supreme Court, however, adopted similar reasoning to Security Insurance in Cronus Investments, Inc. v. Concierge Servs., 35 Cal. 4th 376, 393 (Cal. 2005). Ultimately, neither the criticism nor approval of the decision is of great significance. That is, if Security Insurance remains good law in the Second Circuit and

---

[8] Interestingly, the district court in Security Insurance characterized section 1281.2(c) as a rule relating to the "allocation of power between alternative tribunals" but nonetheless concluded that federal law had no bearing on the interpretation of the choice-of-law clause. Security Insurance Co. v. Trustmark Insurance Co., 283 F. Supp. 2d 602, 608 n.5 (D. Conn. 2003) (citing Mastrobuono, 514 U.S. at 60).

[9] According to Trieshmann, "the practical result of staying arbitration pending litigation is to shift the balance of authority over the dispute from the arbitrator to the courts." Id.; see also George A. Bermann, Ascertaining the Parties' Intentions in Arbitral Design, 113 Penn St. L. Rev. 1013, 1023 (2009) ("Arguably, a postponement of arbitration affects a good deal more than mere timing. The point of postponing arbitration is to avoid an inconsistency of result between the outcomes of the litigation and arbitration. But, that objective can only be achieved by treating the parties to the later proceeding (the arbitration) as bound by the determinations reached in the prior proceeding (the litigation), and that in turn can only be achieved by depriving the arbitrators of the right to make the relevant determinations independently. Only with difficulty can such a result be regarded as arbitration-friendly.")

is controlling of the facts at issue, this court is bound to follow it. In light of the Supreme Court's recent decision in Preston, however, the court finds that Security Insurance is not determinative.

### D. Preston v. Ferrer

Preston involved many of the same issues as Volt, Mastrobuono, and Security Insurance. The disputed contract was between Alex Ferrer, a television personality, and Arnold Preston, an entertainment industry attorney. Preston, 552 U.S. at 350. An arbitration clause provided for the resolution of "any dispute . . . relating to . . . the breach, validity, or legality" of the contract in accordance with AAA arbitration rules. Id. The contract also contained a general choice-of-law clause selecting California law. Id. at 361.

The Court considered whether the choice-of-law clause should be interpreted to incorporate section 1700.44(a) of the California Talent Agencies Act (TAA), Cal. Lab. Code § 1700 et seq. Section 1700.44(a) vests the California Labor Commissioner with exclusive original jurisdiction to determine whether a particular agreement is subject to a statutory provision that requires parties to exhaust administrative remedies before resorting to arbitration. See Preston, 552 U.S. at 356. Ferrer argued that, under Volt, the contract's choice-of-law provision should be read to incorporate California procedural law, including section 1700.44(a)'s grant of jurisdiction to the Labor Commissioner. Id. at 360.

The Supreme Court rejected Preston's argument that Volt controlled for "two discrete reasons." Id. at 361. First, the Court found that in Volt, nothing in the parties' contract addressed the specific situation at issue – litigation involving third-parties – such that the contract could be read to have incorporated section 1281.2(c) as a "gap filler." Id. The contract in Preston, by contrast, incorporated AAA arbitration rules that called for an arbitrator to settle the disputed issue. Id.

Second, the Preston Court stated that it was "guided by [its] more recent decision" in Mastrobuono. Id. According to the Court, "Volt never argued that incorporation of [private arbitration] rules trumped the choice-of-law clause contained in the contract" such that "neither [its] decision in Volt nor the decision of the California appeals court in that case addressed the import of the contract's incorporation by reference of privately promulgated arbitration rules." Id. Finding that Mastrobuono "reached that open question," id. at 362, the Preston Court concluded that the choice-of law clause should be read to incorporate "prescriptions governing the substantive rights and obligations of the parties, but not the State's 'special rules limiting the authority of arbitrators.'" Id. at 363 (quoting Mastrobuono, 514 U.S. at 63-64). The Court adopted this interpretation of the contract without referring to California contract law.[10]

### E. The Applicable Law Post-*Preston*

The Retainer between Hogue and Protostorm includes a general choice-of-law clause and an arbitration clause incorporating AAA arbitration rules. (Retainer at 3.) At a minimum, Preston holds that a contract with these provisions does not incorporate "special [state] rules limiting the authority of arbitrators." See Preston, 552 U.S. at 356. As discussed below, Preston's treatment of Volt further indicates either (1) that, where a contract incorporates private arbitration rules, a general choice-of-law clause is insufficient to incorporate any procedural state arbitration law, or (2) that section 1281.2(c) is a special rule limiting the authority of arbitrators. Either way, the Retainer does not incorporate section 1281.2(c).

The Preston Court strongly suggested that, had the losing party in Volt simply focused on the incorporation of the AAA rules, Volt would have been decided differently. Id. at 361. Both Preston and Mastrobuono interpreted contracts that incorporated private arbitration rules. And

---

[10] See Supreme Court Addresses Volt's Choice-of-Law Trap: Is the End of the Problem in Sight?, 64 J. Disp. Resol. 22 (May-July 2009) (noting that what is significant about Preston "but largely overlooked" is that it "departs from the approach in Volt, which left the interpretation of choice-of-law cases to the state courts.")

12

both decisions found that "the best way to harmonize [a] choice-of-law provision with [an] arbitration provision" is to read the choice-of-law provision "to encompass substantive principles that [state] courts would apply, but not to include special rules limiting the authority of arbitrators." Preston, 552 U.S. at 363; Mastrobuono, 514 U.S. at 63-64. Together these cases can be read to hold that, where a contract incorporates private arbitration rules, a general choice-of-law clause is insufficient to incorporate <u>any</u> procedural state arbitration law.[11] See Fallo v. High-Tech Inst., 559 F.3d 874, 879 (8th Cir. 2009) (Preston holds that, with respect to state arbitration law, "an arbitration provision's incorporation of the AAA Rules supersedes a choice-of-law provision contained in the same agreement").

Alternatively, this rule of construction may only apply to "special rules limiting the authority of arbitrators." That is, state procedural rules that do not offend the FAA's pro-arbitration policy may be incorporated by a general choice-of-law clause, even where an arbitration clause expressly incorporates a body of private arbitration rules. If this is the correct reading of Preston and Mastrobuono, however, Preston also indicates that section 1281.2(c) must be a special rule limiting the authority of arbitrators. If it were not, the result in Volt would have been the same even if the parties <u>had</u> focused on the incorporation of the AAA rules – i.e., section 1281.2(c) still would have been incorporated by the contract's choice-of-law clause.

Preston's treatment of section 1700.44(a) of the TAA also supports the classification of section 1281.2(c) as a rule limiting the authority of arbitrators. Specifically, the Supreme Court rejected Preston's argument that section 1700.44(a) is consistent with the FAA because it "merely postpones arbitration." Id. at 356. The Court explained that "if Ferrer prevailed in the California court . . . he would no doubt argue that judicial findings of fact and conclusions of law

---

[11] See Volt's Choice-of-Law Trap, supra note 10, at 26. ("Preston suggests that a general choice-of-law clause should not be read to trump the FAA, even if state law might read it otherwise, and especially when particular arbitral rules are chosen.")

13

. . . [were] binding on the parties and preclude the arbitrator from making any contrary rulings." Id. at 357.

This reasoning undermines Security Insurance's finding that a stay of arbitration in favor of litigation "determines only the efficient order of proceedings" and not the "allocation of powers between the court and the arbitrator," the "rights of the parties to arbitrate particular issues," or the "arbitrator's power to resolve the dispute."[12]  Security Insurance, 360 F.3d at 327 (internal citations omitted).  But Securities Insurance is factually distinguishable because the contract at issue did not incorporate privately promulgated arbitration rules.  Cf. Interchem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG, 373 F. Supp. 2d 340, 346 (S.D.N.Y. 2005) ("The reading most consistent with the plain language of the agreement is that the parties intended that any disputes concerning the substance of the Contract be governed by New York law, but that as to the procedure of the arbitration and authority of the arbitrator, the AAA Commercial Rules would apply.")

Security Insurance does not control the resolution of the issues before the court.  Either its characterization of section 1281.2(c) is no longer valid because it rests on an understanding of Volt that Preston forecloses, or it is factually distinguishable because the Retainer incorporates the AAA rules.

## IV. CONCLUSION

Plaintiffs' motion for reconsideration is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
May 28, 2010

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

---

[12] See also Trieshmann, supra note 5, at 173, "characterizing Securities as "clearly wrong" because, inter alia, if a court postpones arbitration "under res judicata principles, the arbitrator will be bound by a court's legal and factual findings, and subsequent arbitration will be a pointless formality."

14