FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 14 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PROTOSTORM, LLC and PETER FAULISI,

                Plaintiffs,

-against-

ANTONELLI, TERRY, STOUT & KRAUS, LLP,
DALE HOGUE, FREDERICK D. BAILEY, CARL
I. BRUNDIDGE, ALAN E. SCHIAVELLI, and
JOHN DOES 1-10.

                Defendants.*

------------------------------------------------------------X

**MEMORANDUM & ORDER**
**08-CV-931 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Protostorm, LLC ("Protostorm") and Peter Faulisi ("Faulisi") (collectively, "Plaintiffs") bring this action alleging legal malpractice, breach of contract, and breach of fiduciary duty. (See Second Am. Compl. (Docket Entry # 114).) Antonelli, Terry, Stout & Kraus, LLP ("ATS&K"), Frederick D. Bailey, Carl I. Brundidge, and Alan E. Schiavelli (collectively, the "ATS&K Defendants") move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and based on the affirmative defense that Plaintiffs' claims are time-barred under Federal Rules of Civil Procedure 12(b)(6) and 56. (Docket Entry ## 35, 177.)

    As set forth below, the ATS&K Defendants' motions are DENIED.

---

* The court does not include Third-Party Defendants in the caption because their rights are not affected by this Memorandum & Order.

1

I.  **BACKGROUND**

   A.  **Relevant Procedural History**

Plaintiffs initially brought this action against two individual lawyers, Dale Hogue and Bailey, as well as ATS&K, a Virginia law firm. (See Compl. (Docket Entry # 1).) The parties engaged in limited discovery related to ATS&K and Bailey's anticipated pre-answer motion to dismiss. (See Docket Entry # 29.) On December 19, 2008, ATS&K and Bailey filed a motion to dismiss under Federal Rules of Procedure 12 and 56.[1] (Docket Entry # 35.) Accompanying their motion was a statement filed under Local Rule 56.1.[2] (Docket Entry # 38.)

On February 13, 2009, before ATS&K and Bailey's motion was fully briefed, Plaintiffs filed an Amended Complaint. (Docket Entry # 48.) Plaintiffs served their opposition to ATS&K and Bailey's motion on February 27, 2009. (Docket Entry # 76.) Plaintiffs provided a Rule 56.1 counter-statement with their opposition. (Docket Entry # 74.) In a March 10, 2009 letter to the court, ATS&K and Bailey claimed that "[t]he amended complaint and opposing papers rely significantly on documents plaintiffs failed to produce in pre-motion discovery." (Docket Entry # 55 at 1.) They also sought additional discovery. (Id. at 2.)

By letter dated March 12, 2009, Plaintiffs argued, inter alia, that ATS&K and Bailey's letter was a "de facto admission that there are disputed issues of material fact that can not be resolved on the current record" and that "[a]ny additional discovery which ATS&K wishes to conduct should be part of merits discovery to be conducted after the pending motions are decided

---

[1] Initially, ATS&K and Bailey also challenged the sufficiency of Plaintiffs' allegations of diversity jurisdiction. (See Docket Entry # 39.) Plaintiffs' current complaint (Second Am. Compl. (Docket Entry # 114)) adequately alleges diversity jurisdiction under 28 U.S.C. § 1332. (See id. ¶¶ 1-9.)

[2] As Plaintiffs point out (see Docket Entry # 75 at 1), this submission "does not consist of a short and concise statement of material facts, but, rather, in many instances simply quotes long passages of text from deposition transcripts and other sources." Plaintiffs' own Rule 56.1 statements, however, improperly contain numerous legal conclusions in addition to statements of fact. See Local Rule 56.1.

or withdrawn." (Docket Entry # 57 at 2.) In another letter dated March 30, 2009, Plaintiffs reiterated that position. (Docket Entry # 67.)

At a conference on March 31, 2009, the court directed ATS&K and Bailey to serve a reply and granted Plaintiffs leave to file a sur-reply. The fully briefed motion was submitted to the court on May 19, 2009. The parties commenced merits discovery on June 9, 2009. (See Docket Entry # 106.) Shortly thereafter, the parties began an extensive – and regrettable – pattern of submitting additional evidence and argument to the court relating to ATS&K and Bailey's pending motion. (See Docket Entry ## 110, 111, 116, 117, 197, 200, 202, 203, 234, 235, 236, 237.)

The court will not recount the parties' many letters in detail – simply reviewing them has already consumed significant judicial resources. The letters make clear, however, that the parties believe that the court should not decide the ATS&K Defendants' motions solely on the original moving papers. For example, in a letter dated August 19, 2009, Plaintiffs asked the court to consider "recently discovered evidence relevant to defendants' pending motions to dismiss and for summary judgment." (Docket Entry # 110.) And, as recently as June 4, 2010, the ATS&K Defendants submitted two exhibits and "respectfully request[ed] [the court] consider this evidence in connection with the two motions pending on behalf of the ATS&K Defendants." (Docket Entry # 234).[3]

On August 24, 2009, Plaintiffs filed a Second Amended Complaint that named Brundidge and Schiavelli, two more ATS&K lawyers, as additional Defendants. (Docket Entry # 114.) That same day, ATS&K and Bailey filed a Third-Party Complaint against other lawyers who

---

[3] Despite these positions regarding their own submissions, each party has sought to prevent consideration of the other party's late submissions. (See, e.g., Docket Entry ## 111, 200, 235, 237.) The court also notes that the parties have not consistently complied with Federal Rule of Procedure 56(e)(1), which requires that evidence related to a motion for summary judgment be submitted either in the form of a sworn affidavit or an attachment thereto.

3

represented Protostorm. (Docket Entry # 115.) On September 14, 2009, the parties stipulated that ATS&K and Bailey's motion would be deemed to apply to the Second Amended Complaint. (Docket Entry ## 123, 125.) On September 30, 2009, the ATS&K Defendants filed an Amended Third-Party Complaint. (Docket Entry # 133.)

On December 21, 2009, Brundidge and Schiavelli filed a fully briefed motion to dismiss the claims against them on substantially the same grounds as ATS&K and Bailey, whose prior submissions they incorporated by reference. (Docket Entry # 177.) Brundidge and Schiavelli submitted several exhibits with their motion but did not file a statement under Local Rule 56.1.

## B. Factual Background

Protostorm is a limited liability company with offices in New York. (See Faulisi Decl. (Docket Entry # 77) ¶ 2.) Faulisi co-founded the company. (Id. ¶ 3.) Faulisi and Alan Rummelsburg are the current members of Protostorm. (Handler Decl. (Docket Entry # 80), Ex. 89 at 128.)

In the spring of 2000, Protostorm's outside counsel, Kathy Worthington, introduced Protostorm to ATS&K, a Virginia-based law firm specializing in intellectual property. (Faulisi Decl. ¶ 8.) Protostorm hoped to secure patent and trademark protection for an online computer game and related software (the "Invention"). (Id. ¶¶ 8, 9.) At that time, Hogue was "Of Counsel" to ATS&K. (ATS&K and Bailey Rule 56.1 Statement ("Def. 56.1") (Docket Entry # 38) ¶ 15.)

On June 27, 2000, ATS&K filed a provisional patent application for the Invention in the United States Patent and Trademark Office. (See Handler Decl. Ex. 19.) In connection with its work, ATS&K transmitted faxes, placed calls, and sent e-mails to members of Protostorm and Duval & Stachenfeld LLP, Protostorm's counsel located in New York. (Handler Decl. Ex. 17,

4

18, 19, 21, 22, 23.) Hogue was one of the ATS&K lawyers who worked on matters related to the provisional patent application. (See Def. 56.1 ¶ 25, Handler Decl. Ex. 14, 15.) Hogue ended his formal relationship with ATS&K sometime between late 2000 and early 2001. (Def. 56.1 ¶ 15.)

On May 14, 2001, ATS&K faxed Protostorm's New York counsel a reminder that the final date for filing a non-provisional application was approaching. (Handler Decl. Ex. 25.) Although Hogue was no longer with ATS&K, Protostorm asked Hogue to work on the non-provisional application. (See Faulisi Decl. ¶ 13.) Before agreeing to do so, Hogue asked Protostorm to sign a written retainer agreement. (Id.) Hogue and Protostorm executed such an agreement on May 21, 2010. (Handler Decl. Ex. 29.) It provided for Protostorm to pay Hogue directly. (Id. at 1.) The retainer also stated that Protostorm's patent application "may be physically filed by the Antonelli, Terry, Stout & Kraus firm in Arlington, VA., the firm that filed your provisional patent application" and that ATS&K would provide a separate bill. (Id. at 2.) According to Faulisi, although Protostorm understood that Hogue's relationship with ATS&K had changed, Hogue assured Protostorm that the company would continue to work both with him and with ATS&K. (Faulisi Decl. ¶ 13.)

Hogue alerted ATS&K sometime in "May or June" of 2001 that he would be sending ATS&K the Protostorm application for filing with the patent office. (Handler Decl. Ex. 90 at 102.) During the same time period, ATS&K communicated with Worthington and Duval & Stachenfeld regarding a Protostorm trademark registration. (Handler Decl. Ex. 26, 28, 30.) Hogue had extensive communications with Protostorm in connection with his work on its behalf. (See, e.g., Handler Decl. Ex. 31, 32, 33, 34, 35, 36.) On June 4, 2001, Hogue met in New York with Courtland Shakespeare (the co-inventor of the Invention), Faulisi, and Worthington to discuss Protostorm's non-provisional application. (Faulisi Decl. ¶ 16.) On June 5, 2001,

5

ATS&K e-mailed Protostorm regarding its efforts to secure trademark protection. (Handler Decl. Ex. 38.)

On June 20, 2001, Hogue forwarded the non-provisional patent application to ATS&K for filing. (Handler Decl. Ex. 48.) Hogue indicated that Worthington would be instructing ATS&K separately on foreign filing. (Id.) He noted certain decisions that ATS&K would still need to make and stated: "At this point you have the final patent application. I will add nothing further and any changes will be made by you to eliminate confusion." (Id.) On June 25, 2010, Hogue sent Protostorm's New York counsel a bill for his services. (Handler Decl. Ex. 54.)

On June 27, 2001, ATS&K sent a letter to Duval & Stachenfeld – with Hogue copied – advising that the application had been filed and billing Protostorm for services "to date", including "forwarding timely reminders, reporting filing and completing all formal requirements." (Handler Decl. Ex. 59.) ATS&K also represented that it would "keep [Duval & Stachenfeld] abreast of further developments in this application, as they occur." (Id.) Hogue visited Protostorm in New York on July 16, 2001 and discussed "improvements to the Invention." (Id.) ATS&K mailed two letters to Duval & Stachenfeld in August 2001 regarding the trademark application. (Handler Decl. Exs. 63, 67.) On December 12, 2001, Protostorm communicated with both Hogue and ATS&K regarding the status of the patent application. (Faulisi Decl. ¶¶ 37, 38, 39.)

## II. PERSONAL JURISDICTION[4]

### A. Standard of Review

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). Where, as here, a district court "relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008) (internal quotation marks omitted). This requirement is satisfied if the plaintiff's "own affidavits and supporting materials, contain[] an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks, citation, and alterations omitted). The plaintiff's allegations must be "construed in the light most favorable to [him or her] and doubts [] resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

### B. Transacting Business in New York

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Accordingly, the court must determine whether Plaintiffs have made a prima facie showing that Defendants have sufficient contacts with New York to satisfy its long-arm statute. Id. Although Plaintiffs assert that jurisdiction is proper under several provisions of that statute (see, e.g.,

---

[4] None of the parties' many letters postdating the submission of their moving papers appear to relate to personal jurisdiction. In any event, as set forth below, the standard of review on a motion made under Federal Rule of Civil Procedure 12(b)(2) is such that the court's conclusion would not be affected by any such submission.

Plaintiffs Opp. (Docket Entry # 76) at 13-23), the court need only address N.Y. C.P.L.R. § 302(a)(1). That provision provides that a New York court may exercise personal jurisdiction over a non-domiciliary defendant "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," provided that the cause of action arises out of the subject matter of the transacted business. N.Y. C.P.L.R. § 302(a)(1); see also Cutco, 806 F.2d at 365.

A defendant transacts business in New York within the meaning of § 302(a)(1) if it "purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction. . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim." Kreutter v. McFadden Oil Co., Inc., 71 N.Y.2d 460, 467 (1988). Moreover, as the statute itself makes clear, the acts of an agent can be attributed to a principal to establish that the principal "transacted business" within New York. N.Y. C.P.L.R. § 302(a)(1).

In the context of personal jurisdiction, New York courts focus on "the realities of the relationship in question rather than the formalities of agency law." CutCo, 806 F.2d at 366; Kreutter, 71 N.Y.2d at 467. The alleged agent must act "for the benefit of, and with the knowledge and consent of, the non-resident principal." CutCo, 806 F.2d at 366; Kreutter, 71 N.Y.2d at 467 (setting forth the same requirements). The principal must also exercise "some control" over the alleged agent. CutCo, 806 F.2d at 366; Kreutter, 71 N.Y.2d at 467. But a plaintiff need only show a limited amount of control, and joint control of a business enterprise "similar to that existing in a partnership or joint venture" is sufficient. CutCo, 806 F.2d at 366.

Hogue transacted business in New York by visiting Protostorm in connection with his patent-related work in June and July 2001. There is a "substantial relationship" between those visits and Plaintiffs' claims insofar as they all involve the work of Protostorm's lawyers to obtain protection for the Invention.

Plaintiffs assert that the ATS&K Defendants and Hogue jointly represented Protostorm such that Hogue's New York contacts can be attributed to the ATS&K Defendants. Resolving all doubts in Plaintiffs' favor, as the court is required to do, Plaintiffs have averred sufficient facts to satisfy New York's long-arm statute. Protostorm initially retained ATS&K to assist it in securing intellectual property rights related to the Invention. While ATS&K was representing Protostorm in connection with a trademark application, Protostorm worked with Hogue on a patent application that flowed directly from work that Hogue previously performed at ATS&K. As early as May 2001, Hogue alerted ATS&K that he would ask them to perform certain services with respect to Protostorm's patent application. ATS&K stood to benefit financially from Hogue's work. ATS&K and Hogue copied each other on communications with Protostorm that dealt with the scope of their respective roles.

For the purposes of ATS&K and Bailey's current motion, these facts are sufficient to show that Hogue acted with ATS&K's knowledge, for its benefit, and in a manner resembling a joint venture. Because Hogue's visits can be attributed to ATS&K, the requirements of New York's long arm statute are satisfied for the purposes of the instant motion.

C.  **Due Process**

The ATS&K Defendants also argue that subjecting them to this court's jurisdiction would violate due process. The due process test for personal jurisdiction has two related components: (1) a "minimum contacts" inquiry, and (2) a "reasonableness" inquiry. See Metro. Life Ins. Co.

9

v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). "The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." Id. If such contacts exist, the court may assert personal jurisdiction so long as "it is reasonable under the circumstances of the particular case." Id. at 568.

The minimum contacts requirement is satisfied where a defendant's conduct and connection with the forum state are such that "he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). In order to satisfy due process, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The reasonableness inquiry asks whether the assertion of personal jurisdiction in a particular case comports with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). The following factors govern reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987). Where a plaintiff demonstrates sufficient minimum contacts, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); Asahi, 480 U.S. at 116 (Brennan, J., concurring) (finding that only in "rare cases" will inconvenience defeat the reasonableness of jurisdiction).

The ATS&K Defendants provide almost no support for their claim that exercise of personal jurisdiction would violate due process. (See, e.g., Def. Mem. (Docket Entry # 76) 15-16.) Accepting Plaintiffs' allegations as true, however, the ATS&K Defendants purposefully entered into the representation of a New York client, communicated with that client and its other lawyers regarding legal services, and were aware that Hogue – who actually travelled to New York – was acting for its benefit in a relationship akin to a joint venture. Moreover, Plaintiffs allege that certain of the ATS&K Defendants consciously made false representations to Protostorm, a New York company. (See Faulisi Decl. ¶¶ 37-40.) Accordingly, the ATS&K Defendants made sufficient contacts with New York that they should have reasonably anticipated being haled into court here. There is nothing in the record to suggest that jurisdiction is otherwise unreasonable. The court's exercise of personal jurisdiction is therefore consistent with due process.

### III. SUMMARY JUDGMENT ISSUES

As the court has already noted, the parties have made piecemeal letter submissions relating to the ATS&K Defendants' summary judgment motions. If the court were to decide those motions on the merits, it could either (1) attempt to parse the letters for relevant information and argument and consider it, despite the parties' failure to comply with the requirements of Federal Rule of Civil Procedure 56, or (2) ignore the letters and solely consider the parties' formal submissions.

Each option is problematic. If the court were to attempt to parse the parties' many letters, it might well miss important information. Moreover, the court would not have the benefit of any Rule 56.1 statements covering the information submitted by letter. Finally, it is not clear whether the parties have put forth all of the evidence and arguments that they would like the

11

court to consider, or if they exercised some degree of restraint. On the other hand, if the court were to ignore the letters altogether in deciding the instant motions, it would almost certainly be faced with either a motion for reconsideration or a new motion for summary judgment because both parties have indicated that they would like the court to consider additional information. This course is not an efficient use of the court's limited resources. The lack of Rule 56.1 statements covering the newly submitted evidence – and the infirmities in the parties' current Rule 56.1 statements – also militate against deciding the motions' on the current record.

Consequently, the court denies the ATS&K Defendants' motions under Federal Rules of Procedure 12(b)(6) and 56 without prejudice. It appears that merits discovery is now complete. To the extent that this is true – or when it is – the ATS&K Defendants are granted leave to file another motion for summary judgment on substantially the same grounds as their present motions. To the extent that they wish to do so, the parties should confer regarding a possible briefing schedule. The parties are further instructed to reacquaint themselves with Local Rule 56.1 and are counseled that the court will not consider any letters that are submitted after briefing is complete.

Finally, while the court does not address the substance of the ATS&K Defendants' motions at this time, it offers one observation. Before evaluating whether Plaintiffs' claims are time-barred, the court will need to engage in a choice-of-law analysis. "In diversity cases, 'state statutes of limitations govern the timeliness of state law claims', and state law 'determines the related questions of what events serve to commence an action and to toll the statute of limitations.'" Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990) (quoting Personis v. Oiler, 889 F.2d 424, 426 (2d Cir. 1989)).

The parties appear to assume that the court's determination of which statute of limitation applies will be made by weighing the interests of various states. (See, e.g., Def. Mem. 25-26.) This may not be the appropriate inquiry. New York's statute of limitations applies unless a nonresident plaintiff sues upon a cause of action that arose outside of New York. See Stafford v. International Harvester Co., 668 F.2d 142, 147 (2d Cir. 1981); N.Y. C.P.L.R. § 202; see also Bianco v. Erkins, 243 F.3d 599, 608 (2d Cir. 2001) ("Modern choice-of-law decisions are simply inapplicable to the question of statutory construction presented by C.P.L.R. 202. C.P.L.R. 202 is to be applied as written, without recourse to a conflict of law analysis.") (quoting Ledwith v. Sears Roebuck & Co., 660 N.Y.S.2d 402, 406 (1st Dep't 1997)). To the extent that the parties agree that New York law governs issues related to the statute of limitations, they should tailor any future arguments appropriately.

## IV. CONCLUSION

For the foregoing reasons, the ATS&K Defendants' motion to dismiss the claims against them for lack of personal jurisdiction is DENIED. The ATS&K Defendants' motions to dismiss based on Federal Rules of Civil Procedure 12(b)(6) and 56 are DENIED without prejudice.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
October 12, 2010

NICHOLAS G. GARAUFIS
United States District Judge

13