UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PROTOSTORM LLC,

                Plaintiff,

             -against-

ANTONELLI, TERRY, STOUT & KRAUS, LLP,
FREDERICK D. BAILEY, and CARL I.
BRUNDIDGE,

                Defendants.

------------------------------------------------------------------x

**MEMORANDUM & ORDER**
08-CV-931 (PKC) (JO)

PAMELA K. CHEN, United States District Judge:

Before the Court are Plaintiff Protostorm LLC's ("Protostorm") motions to amend the order of judgment and for prejudgment interest.

## BACKGROUND

The Court assumes the parties' familiarity with the extensive trial record in this case and the context in which these motions arise. Only background directly relevant to the resolution of the instant motions is set forth below.

At trial, the jury found that Protostorm proved by a preponderance of the evidence that it was entitled to $6.975 million in compensatory damages. (Dkt. 534, ECF 32, Q. 9.)[1] On the Verdict Sheet, the jury was instructed to factually apportion the *fault* among Defendants, as well as among Plaintiffs and non-party Dale Hogue based on Defendants' assertion of comparative negligence. The jury apportioned fault as follows:

---

[1] ECF references are to the page numbering of the ECF system and not the document's internal pagination.

- <u>Plaintiff Protostorm LLC</u>         4%
- <u>Plaintiff Peter Faulisi</u>          0%
- <u>Defendant ATS&K[2]</u>               75%
- <u>Defendant Frederick Bailey</u>       6%
- <u>Defendant Carl Brundidge</u>         15%
- <u>Defendant Alan Schiavelli</u>        0%
- <u>Dale Hogue</u>                       0%

Separately, the jury assessed $900,000 in punitive damages against ATS&K, and $100,000 in punitive damages against Brundidge. (Dkt. 534, ECF 32, Q. 12.) It assessed no punitive damages against Bailey.

Thereafter, Protostorm moved the Court to hold ATS&K liable for any fault assigned to Brundidge and Bailey for the purpose of damages. (Dkt. 550.) By Order dated October 8, 2014, the Court ruled, *inter alia*, that ATS&K was liable for the malpractice of its attorneys under the doctrine of *respondeat superior*, and thus responsible for the entire compensatory damages award. (Dkt. 565 at 8 (citing *Yaniv v. Taub*, 683 N.Y.S.2d 38, 256 for the proposition that a professional services corporation is liable for a tort committed by its employees).)

On October 9, 2014, the Court entered judgment (the "October 9th judgment") accordingly, imposing a $6.975 million compensatory damage award and $900,000 punitive damage award against ATS&K, and a $100,000 punitive damage award against Brundige.[3] The Court noted that because the calculation of pre-judgment interest was the subject of pending

---

[2] At trial this was, and herein this is, the abbreviation for defendant Antonelli, Terry, Stout & Kraus, LLP.

[3] As discussed below, the Court erroneously failed to deduct 4% from the $6.975 million compensatory damage award based on the jury's assignment of 4% fault to Protostorm.

briefing, the judgment did not specify such an amount; rather, the judgment would be amended as necessary once the prejudgment interest motion was resolved.

In addition, on October 13, 2014, Protostorm moved to amend the October 9th judgment, purportedly pursuant to Rule 60(a) of the FRCP due to "an apparent 'clerical mistake or a mistake arising from oversight or omission.'" (Dkt. 567 at 1.) In reality, the motion asked the Court to amend the decretal paragraph of the judgment, contrary to Protostorm's earlier request, to make ATS&K, Brundige, and Bailey jointly and severally liable for the compensatory damage award.[4]

All parties submitted letter briefs on the prejudgment interest and joint and several liability issues.

## DISCUSSION

### I. Protostorm's Contributory Negligence

As an initial matter, the October 9th judgment stated, *inter alia*, that Defendant ATS&K was liable for $6.975 million in compensatory damages. That compensatory damages award, however, should have been reduced by 4% based on the jury's finding that Protostorm was 4% at fault. (Dkt. 534, ECF 32, Q. 12.) Therefore, the total compensatory damages award is $6,696,000.

### II. Joint and Several Liability

Protostorm argues that despite the Court's finding—at Protostorm's behest—that ATS&K is vicariously liable for the acts of its employees, Bailey and Brundidge should

---

[4] In Protostorm's motion to amend, it stated that Brundidge and Bailey should be held jointly and severally liable "in amounts reflective of the percentages of fault found by the jury, i.e. 15% for Brundidge and 6% for Bailey." (Dkt. 567 at 1.) Further demonstrating the lack of coherence in Protostorm's position, in its reply brief, it once again changed its theory to argue that ATS&K, Brundidge, and Bailey were each jointly and severally liable for the *entire* compensatory damages judgment. (Dkt. 574, p. 2 ¶ 5.)

nevertheless be held jointly and severally liable with their employer, ATS&K, for the entire amount of compensatory damages (less 4%) awarded by the jury. The Court disagrees.

The general rule is that "when multiple tortfeasors 'act concurrently or in concert to produce a single injury, they may be held jointly and severally liable.'" *Schipani v. McLeod*, 541 F.3d 158, 163 (2d Cir. 2008) (quoting *Ravo v. Rogatnick,* 70 N.Y.2d 305, 309 (1987)). This rule is inapplicable here, however, because ATS&K and Bailey/Brundidge do not qualify as "multiple torfeasors"; rather, they are a single entity with respect to the tort committed in this case, namely legal malpractice, and the injury suffered by Protostorm as a result. This is in accordance with the Court's previous order and well-settled tort law that ATS&K "is vicariously liable for torts committed by its employees while acting within the scope of their employment." *Riviello v. Waldron,* 47 N.Y.2d 297, 302 (1979); *see also Yaniv*, 683 N.Y.S.2d at 256 (applying vicarious liability in the context of professional services corporations).

Indeed, these principles were recognized by Protostorm during a conference on the jury charges when Protostorm's counsel stated: "I would respectfully suggest that [the Court] read, 'I also instruct you that you *must* attribute the acts of the individual defendant attorneys to ATS&K.'" (T. 2841 (stating that Court should use "must" rather than "may").) The Court agreed, and so instructed the jury. Then, in granting Plaintiff's post-trial motion to attribute the fault of the individual defendants to ATS&K, the Court wrote: "By requesting the change from "may" to "must," to which Defendants did not object, Plaintiffs made plain their theory that ATS&K was legally responsible for all acts undertaken by the individual defendants in their capacity as ATS&K attorneys." (10/8/14 Order at 4, n. 6.)

Protostorm now attempts to have it both ways, arguing that the individual Defendants, Brundige and Bailey, are jointly and severally liable with ATS&K for the entire compensatory

4

damages award.  In support, Protostorm relies on *Ravo* for the proposition that the jury's apportionment of fault does not alter the joint and several liability of the individual Defendants. Such reliance is inapposite.  While Protostorm is correct that the apportionment of fault between individual defendants does not eliminate joint and several liability, that is is entirely unrelated to the reason that joint and several liability does not apply in this case.  Joint and several liability is inapplicable here because, under the law and facts of the case, there is only a single tort-feasing entity.  *See* Order dated 10/8/14; *Ravo*, 70 N.Y.2d at 309 ("[w]hen two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable.").  Here, the jury specifically found that ATS&K committed malpractice *through* the negligence of its attorneys, *i.e.*, Defendants Brundige and Bailey.  (*See* Jury Instructions at 10 ("you must attribute the acts of the individual defendant-attorneys to ATS&K in determining whether ATS&K is liable for negligence.")[5]  By contrast, in *Ravo*, two completely distinct individuals—an obstetrician and a pediatrician that were not acting in concert—were found to have caused a single indivisible harm.

Accordingly, because ATS&K is liable for all acts of its employees that are committed within the scope of their employments, ATS&K, the only tort-feasor in this case, is solely liable for the entirety of the $6,696,000 compensatory damage award.

III.　　Prejudgment Interest

Protostorm moves for prejudgment interest on its $6,696,000 compensatory damages award.[6]  Specifically, Protostorm asks for prejudgment interest at a 9% rate running from June

---

[5] In fact, the Court added this instruction at Protostorm's vehement request.  (Dkt. 565 at 4, n.6 and accompanying text).

[6] The parties agree that no prejudgment interest should be granted on either punitive damages award.

25, 2006 through the entry of final judgment. (Dkt. 556 ¶¶ 4, 6.) ATS&K counters that Protostorm waived its right to prejudgment interest. (Dkt. 591 at 2.) Further, ATS&K argues that if the Court does award prejudgment interest, it should be computed from the commencement of this lawsuit on March 4, 2008 through the verdict, which was returned on August 15, 2014, excluding the period of pre-trial delay purportedly attributable to Protostorm. (*Id.* 2-4.) In addition, ATS&K argues that interest should only apply to the portion of compensatory damages that can be attributed to prejudgment, not future, losses. (*Id.* at 4.)

As an initial matter, in a diversity case such as this, State law governs the award of prejudgment interest. *See Schipani*, 541 F.3d at 164-65. New York law provides for an interest rate of 9% per annum. N.Y.C.P.L.R. § 5004. Where, as here, the jury has found a defendant liable for malpractice, prejudgment interest is appropriate. *See Barnett v. Schwartz*, 47 A.D.3d 197, 208, 848 N.Y.S.2d 663 (App. Div. 2007).

A. <u>Waiver</u>

ATS&K claims that Protostorm is not entitled to prejudgment interest because Protostorm failed to request such interest in its Second Amended Complaint and/or at trial. However, whether or not Protostorm specifically requested such relief, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed. R. Civ. P. 54(c). "In applying this rule, the Second Circuit has clearly established that the prevailing party's failure to request interest in its pleadings does not constitute waiver of the right to prejudgment interest." *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 232 F. Supp. 2d 289, 291 (S.D.N.Y. 2002). The case cited by ATS&K in support of its waiver argument, *Lee v. Seagram & Sons, Inc.*, 592 F.2d 39 (2d Cir. 1979), stands only "for the proposition that a party's ability to amend an order to

include prejudgment interest lapses once a motion to alter or amend a judgment, pursuant to FRCP 59(e), is no longer timely." *Stanford Square, L.L.C.,* 232 F. Supp. 2d at 291. Protostorm timely made its motion for prejudgment interest, and thus has not waived recovery.

    B. <u>Computation Date</u>

The parties dispute the date from which interest is to be calculated. Protostorm believes the appropriate date is July 1, 2006, the earliest date that "damages were incurred," *i.e.,* the date "when the patent would have been awarded and could have been monetized." (Dkt. 556 at 3 (citing C.P.L.R. 5001(b)). ATS&K argues that because there is no single ascertainable date from which prejudgment interest can be computed, it should be calculated from March 4, 2008, the date of the commencement of this litigation. (Dkt. 591 at 3-4.)

According to New York Civil Practice Law ("CPLR") 5001(c), where, as here, "a jury is discharged without specifying the date, the court upon motion shall fix the date." CPLR § 5001(b) instructs courts on how to calculate prejudgment interest:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y.C.P.L.R. 5001(b). Also relevant here, where "damages are incurred at various times after the cause of action accrues, section 5001 grants courts wide discretion in determining a reasonable date from which to award prejudgment interest." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994).

At trial, Protostorm's expert, Irving Rappaport ("Rappaport"), testified that the subject patent likely would have issued five years from the June 25, 2001 submission of the patent application to the U.S. Patent Office, *i.e.,* June 25, 2006. (Tr. 896-97; 994.) Defendants' experts, on the other hand, testified that Protostorm's submission was non-patentable. Implicit in

the jury's finding of liability is that Rappaport's testimony was credible with respect to patentability.[7] Therefore, in an attempt to pinpoint "the earliest ascertainable date" that the cause of action existed," the Court will likewise credit Rappaport's patentability testimony and compute prejudgment interest from June 25, 2006.

ATS&K also argues that prejudgment interest only applies to the portion of compensatory damages that can be attributed to pre-judgment losses, and not to future losses. The Court agrees.

In conducting its calculation, ATS&K uses the royalty rates that Rappaport, *Protostorm's* expert, testified would have been likely. Protostorm responds that such a calculation is inappropriate because Rappaport testified as to "various ways the patent could have been monetized in addition to royalties from licensing" (Dkt. 597 at 5), and that it is impossible to know on what basis the jury calculated damages. However, to the extent there are unknown variables, that fact is construed against Protostorm for failing to include a request for prejudgment interest in its Second Amended Complaint or for the jury to make the necessary findings to support the interest calculation now urged by Protostorm.[8] In any event, the trial record makes it is abundantly clear that the royalty method is the most equitable way to calculate damages for purposes of prejudgment interest. At trial, after very briefly listing various ways a company or individual could profit from ownership of a patent, Protostorm's expert, Rappaport, testified as follows:

---

[7] This can be contrasted with the fact, as discussed below, that the jury did not entirely credit Rappaport's testimony regarding damages.

[8] As discussed, while the Court has declined to hold that such a failure constitutes a complete waiver, it nevertheless has the substantive impact of leaving the Court without relevant information.

| [Protostorm's Counsel]: | And just to be clear, from those various ways to make money from an issued patent, what method or what approach did you focus on here? |
|---|---|
| [Rappaport]: | I chose to use the method of licensing the patent that I believe should have issued based on the Protostorm invention after examination by the Patent Office. |
| [Protostorm's Counsel]: | Okay. And why did you do that? |
| [Rappaport]: | Because in this particular sense, it seemed to me to be the most direct way that Protostorm could have received money for its patented invention. . . . |
| | [M]y experience is that it's preferable if the owner of a patent can find willing licensees to take licenses on the patented invention. |

Rappaport then proceeded to explain his damages analysis at length, all of which was based on the royalties he claimed Protostorm would have received had the patent issued. (*See* Tr. 966-1008.)

It strains the bounds of good faith for Protostorm, having previously failed to articulate its prejudgment interest demand, to now suggest that some unspecified method other than its *own expert's* suggested method should be used to assess damages in the Court's calculation of prejudgment interest. Indeed, Protostorm's suggestion that it might have received a single "lump sum" in 2006 is based on unsupported speculation, as opposed to the over 40 pages of trial testimony from Rappaport setting forth damages based on royalties.[9]

---

[9] Moreover, unlike in many or most other cases where prejudgment interest is awarded, this is not a case where the defendants improperly had the use of a plaintiff's money during the pendency of the litigation. *Cf. Van Nostrand v. Froehlich*, 44 A.D.3d 54, 57, 844 N.Y.S.2d 293, 296 (App. Div. 2007) ("the intent of the statute is to merely indemnify plaintiffs for the cost of the defendants having the use of another person's money between the time it is determined that compensation is due until judgment."). While this fact does not eliminate Protostorm's right to be made whole, it does bear on the appropriate amount of the award.

With respect to the final computation date, Protostorm argues that the prejudgment interest should be calculated through the date of the final judgment, whereas ATS&K argues that the final date should be the date of the jury's verdict. The Court agrees with Protostorm.

Under New York law, in addition to the interest required by section 5001, section 5002 directs that prevailing plaintiffs also receive interest "upon the total sum awarded, including interest to verdict, . . . [and] from the date the verdict was rendered . . . to the date of entry of final judgment." N.Y. C.P.L.R. § 5002; *see also Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 667 (S.D.N.Y. 2013). Thus, pursuant to section 5001, the Court will add 9% interest from the date the damages were incurred to the date of verdict; pursuant to section 5002, the judgment will reflect an additional 9% interest from the date of verdict to the date of the final judgment as dictated by this order.

Lastly, ATS&K argues that the Court should exclude from any prejudgment interest calculation the period of pre-trial delay allegedly caused by Protostorm. The Court declines to do so. First, had ATS&K not committed legal malpractice,[10] Protostorm would have had the use of funds relating to its patent during this time period. *See generally Spodek v. Park Prop. Dev. Associates*, 96 N.Y.2d 577, 581 (2001) (the purpose of prejudgment interest is "to make an aggrieved party whole."). Second, absent dilatory tactics, or bad faith, the Court is loathe to assign periods of delay resulting from the fray of litigation, especially in a lawsuit as hard fought as this one, to one side or the other. This is well illustrated here where the "delay" attributed to Protostorm by ATS&K (for the submission of a supplemental expert report) only directly accounts for a three-month hiatus, and cannot fairly be held accountable for the flood of motions made over the ensuing 21 months.

---

[10] The jury having so found, the Court takes this to be true for purposes of these motions.

C. Computation

According to Rappaport, "an issued patent would have had a 20-year life from the date of the filing of the original [ ] June 25th, 2001, application date" (T. 1004), and the patent would have monetized around June 25, 2006. Rappaport testified that Protostorm would have made $41.088 million - $61.326 million from 2006-2011. (*Id.*) He further testified that Protostorm would have made $113.252 million - $169.878 million from 2012-2021. (T. 1005-06; Dkt 608-1 (Rappaport Slides) at 17.)

The Court therefore adopts the computation set forth by ATS&K (Dkt. 591-1; 591-2; 608-2), which is based on Rappaport's testimony, with one exception. ATS&K's computation only runs through September 28, 2012, based on ATS&K's argument that two years of alleged pre-trial delay should be attributed to Plaintiff. (*See* Dkt. 591-2 at ECF 2, 4.) As discussed *supra*, the Court is not excluding time for Protostorm's alleged pre-trial delay, and therefore calculates prejudgment interest through the date of final judgment in this case, December 11, 2014. The yearly breakdown for prejudgment interest is as follows:

- Prejudgment interest for damages from 2006-2008:    **$83,785.80**
- Prejudgment interest for damages from 2009:    **$96, 182.24**
- Prejudgment interest for damages from 2010:    **$132,187.42**
- Prejudgment interest for damages from 2011:    **$119,138.30**
- Prejudgment interest for damages from 2012:    **$44,220.52**
- Prejudgment interest for damages from 2013:    **$44,220.52**
- Prejudgment interest for damages from 2014:    **$41,683.30**[11]
- Total Prejudgment interest:    **$561,418.10**

---

[11] The daily prejudgment interest for the period of 2014 is $120.82. In light of the fact that there are 21 days remaining in 2014, the Court has deducted $2,537.22 ($120.82 X 21) from the annual damages number for 2014 ($44,220.52). Such an adjustment is unnecessary for the 2006 interest because it is based on Rappaport's calculation of damages, which factored in the June 25, 2006 monetization date.

Therefore, the Court will award Protostorm prejudgment interest in the amount of **$561,418.10** for the period between June 25, 2006 to the date of final judgment.

## CONCLUSION

For the foregoing reasons, the final judgment will reflect that (1) ATS&K is liable to Protostorm for $6,696,000 in compensatory damages and $900,000 in punitive damages; (2) ATS&K is liable to Protostorm for $561,418.10 in prejudgment interest; and (3) Brundidge is liable to Protostorm for $100,000 in punitive damages. The Clerk of the Court will be directed to apply any applicable post-judgment interest.

SO ORDERED:

    /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: December 11, 2014
       Brooklyn, New York